# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REBECCA SMITH, | : | No.: 4:16-CV-01040 |
| Plaintiff, | : | (Judge Brann) |
| v. | : | |
| MOUNT NITTANY MEDICAL CENTER, | : | |
| Defendant. | : | |

## ORDER

**AND NOW**, this 6th day of June 2017, the Court having reviewed the record in light of the applicable law, **IT IS HEREBY ORDERED** that:

1. Plaintiff's deposition speaks for itself, and she is **EXCUSED** from appearing personally at the Court's June 8, 2017 argument.

2. In addition to the motions listed in this Court's May 8, 2017 Scheduling Order, the Court will also ask Plaintiff's Counsel at the time of the oral argument whether counsel failed to conduct a reasonable inquiry into the applicable law and factual contentions, as required by Federal Rule of Civil Procedure 11, in light of the following:

(a) Plaintiff's deposition reveals that she failed to give the Defendant "fair warning" of a claimed religious exemption as a matter of law when she supplied Defendant with a number of possible justifications for an exemption in a single email and instructed one of Defendant's employees to select whichever justification that employee preferred.

(b) Plaintiff's deposition reveals that, until after she was terminated, she failed to respond to all subsequent communications from Defendant's employees that inquired into the justification(s) for her refusal to obtain the TDAP vaccine.

(c) In fact, Plaintiff's deposition reveals that, despite receiving numerous communications indicating that she would be terminated if she did not received the TDAP vaccine, she did not email, telephone, or speak with any of Defendant's employees to discuss her situation.

(d) Plaintiff's deposition further reveals that after filing a "grievance" that omitted any discussion of a religious

exemption with the wrong departments, the Vice President of Defendant's Human Resources department nevertheless contacted her on June 4, 2015.

(e) That communication from Human Resources stated: "I will be working with you regarding this matter." In addition, it expressly requested that Plaintiff reply and submit certain documentation regarding her justification(s) for refusing the TDAP vaccine "so that we may begin our conversation." It continued: "Once I receive that information from you and I have a chance to review your thoughts, we can then plan to continue our discussion." The letter concluded as follows: "Thank you and if you have any questions, please contact my office." The letter supplied the contact phone number for that employee's office.

(f) Plaintiff admits in her deposition that, until after she was terminated, she did not reply to that communication in any manner, did not send the requested documentation,

and did not contact the provided telephone number for Defendant's Human Resources department.

(g) Instead, Plaintiff's deposition reveals that she ultimately waited nearly two months until July 31, 2015 to respond to the June 4, 2015 Human Resources communication, which response occurred more than three weeks after her July 9, 2015 termination.

(h) When she did respond, her letter and supporting documentation, which she compiled by misappropriating Defendant's company resources, totaled 95 pages in length and omitted any discussion of a religious exemption request, except to the extent that Plaintiff was "convinced and convicted . . . as a Christian" that "this practice . . . clearly violates the laws and principles of God's Word the Bible."

(i) Not only did she fail to give the Defendant "fair warning" under the law, but Plaintiff's deposition also reveals that even after she was offered a reasonable accommodation, she also failed to communicate with

Defendant and engage in the interactive process in good faith.

(j) In particular, instead of engaging in the interactive process, Plaintiff immediately filed with the EEOC a formal charge against the Defendant that alleged religious discrimination.

(k) Further, the record reveals that the Defendant, upon receiving notice of Plaintiff's charge from the EEOC in September 2015, offered Plaintiff a reasonable accommodation, which accommodation consisted of a departmental transfer. The offer was communicated through the EEOC official handling Plaintiff's charge. Neither the Plaintiff nor the EEOC responded to Defendant's offer.

(l) The record further reveals that after receiving a copy of the formal charge in November 2015, the Defendant again offered its reasonable accommodation to Plaintiff and the EEOC. For a second time, neither responded.

(m) After the Defendant made its third offer of a reasonable accommodation in November 2015, Plaintiff accepted that accommodation and returned to work in February 2016.

(n) Counsel for Plaintiff thereafter initiated this action on June 1, 2016.

(o) In *Moore v. CVS Rx Servs., Inc.*, 142 F. Supp. 3d 321, 342 (M.D. Pa. 2015), a decision affirmed by the United States Court of Appeals for the Third Circuit, this Court granted summary judgment in an accommodation case where "it was Plaintiff who ultimately failed to maintain adequate communication with Defendant or submit the required paperwork."

(p) Moreover, Plaintiff's deposition and her formal communications with Defendant's employees reveal that her aversion to the TDAP vaccine was based upon her concerns with the vaccine's safety and efficacy.

(q) The Supreme Court of the United States has held that "the test of belief in a relation to a Supreme Being is

whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God." *United States v. Seeger*, 380 U.S. 163, 165–66 (1965). It has also held that "the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests." *Wisconsin v. Yoder*, 406 U.S. 205, 215–16 (1972).

(r) Interpreting *Seeger* and *Yoder*, the Honorable Arlin M. Adams, writing for the Third Circuit, held that in religious discrimination cases, "[a] court's task is to decide whether the beliefs avowed are (1) sincerely held, and (2) religious in nature, in the claimant's scheme of things." *Africa v. Com. of Pa.*, 662 F.2d 1025, 1030 (3d Cir. 1981).

(s) In August 2016, prior to counsel for Plaintiff opposing Defendant's motion for judgment on the pleadings, the Honorable Gerald J. Pappert, writing for the United

States District Court for the Eastern District of Pennsylvania, applied *Africa* in granting a medical center's motion to dismiss a Title VII religious discrimination complaint. Judge Pappert held that the plaintiff's "sincerely held moral and ethical beliefs regarding the flu vaccination" were not protected "religious" beliefs as a matter of law. *Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 200 F. Supp. 3d 553, 559 (E.D. Pa. 2016).

(t) Counsel for Plaintiff has not brought any of the above adverse authorities to the Court's attention in her papers, nor has she made any attempt to distinguish them.

(u) Plaintiff further necessitated the June 8, 2017 hearing when she refused to produce certain medical records clearly within the scope of discovery in cases like this one, where religious sincerity is at issue. Counsel for Plaintiff's justification that Plaintiff's religious beliefs were so narrow that she only developed an objection to the TDAP vaccine in particular is untenable under the

law and alerted the Court that something was likely amiss in the allegations underlying this case.

(v) Subsequent discovery responses have revealed that Plaintiff has in fact taken several antibiotics, inhalers, IV fluids, and other known and unknown medications, in addition to having undergone an "intubation" procedure related to hospitalized childbirth, since forming her "religious" belief in 2013.

(w) Plaintiff's deposition further reveals that her "religious" belief is not one that she has held for the entirety or even the majority of her life. Rather, she "formed" it after "studying" the TDAP vaccine in 2013.

(x) Counsel for Defendant put counsel for Plaintiff on notice of these legal and factual defects by filing a motion for judgment on the pleadings on October 14, 2016.

(y) Instead of concurring in that motion, counsel for Plaintiff filed a cross-motion for sanctions in response, because counsel for Defendant's motion had allegedly relied upon information not integral to the Complaint.

(z) Counsel for Plaintiff's cross-motion for sanctions was inappropriate, as it was based upon conduct that has already been approved by the Third Circuit generally and by the Eastern District of Pennsylvania in a vaccine refusal case specially. *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (Cowen, J.) ("We now hold that a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("A document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."); *Fallon*, 200 F. Supp. 3d at 558 ("Fallon's complaint explicitly cites and relies upon a number of passages from the essay that he submitted to Mercy. The essay and letter provide the basis for Fallon's exemption request

and subsequent termination; they are both 'integral to' and 'explicitly relied upon in the complaint.'").

(aa) The proper course of action was to contest the validity of such a practice in its opposition brief, not to file a frivolous motion in an already dubious case.

(bb) This is the second of two matters brought by counsel for Plaintiff requesting the rather remarkable remedy that nurses who frequently come in contact with patients, including neonatal infants and pregnant women, be permitted to forego standard vaccines.

(cc) The first case was dismissed when counsel for Plaintiff apparently missed the deadline to file an amended complaint.

(dd) In light of the foregoing, the Court is of the view that this litigation is highly questionable, has likely wasted the resources of the Court and the parties, and may require the imposition of sanctions to deter future vexatious conduct.

3. Accordingly, at the time of the June 8 argument, counsel for Plaintiff shall also be prepared to discuss whether this case will be voluntarily dismissed or whether it warrants further expenditure of resources.

4. The Clerk of Court is directed to docket this Order as a "written opinion," pursuant to the E-Government Act of 2002.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge